IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL MARSHALL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 09-1703 |
| vs. | ) ) | Judge Nora Barry Fischer |
| AT&T UMBRELLA BENEFIT PLAN NO. 1, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Michael Marshall ("Plaintiff") filed the instant action against the Defendant AT&T Umbrella Benefit Plan No. 1 ("Defendant plan") pursuant to the Employee Retirement Income Security Act ("ERISA") of 1974, § 502, 29 U.S.C. § 1132, challenging the Defendant's decision to deny him short-term disability ("STD") benefits under the terms of the Defendant's Disability Income Program. Defendant plan administered the benefit plan for employees of AT&T Mobility Services LLC, the Plaintiff's employer at all relevant times to this action. Presently pending before the Court for consideration is the Defendant plan's motion for summary judgment. For the reasons outlined herein, the Court GRANTS Defendant plan's motion, with prejudice.

**II. FACTUAL BACKGROUND**

**A. General Background**

Plaintiff is an individual that resides at 617 Three Degree Road in Butler, Pennsylvania. (R. at 1). Defendant plan is a benefit plan operated for employees of AT&T Mobility, LLC. (R. at 1-2). Plaintiff is a former store manager for AT&T Mobility, LLC and is an "Eligible

1

Employee" under the AT&T Disability Income Program. (R. at 296). Plaintiff was initially employed by AT&T Mobility, LLC on or about June 1, 2006. (R. at 3).

Plaintiff received a performance appraisal for the year 2008 that indicated a decline in performance from 2007 and that he was not meeting many of the established goals for his position. (*see* Marshall Dep. Exs. 4, 5, 6). In February 2009 Plaintiff was placed on a performance improvement plan due to his decline in performance. (Document 57-2 at P. 11-13).

### B. AT&T Disability Income Program and Short-Term Disability Benefits

The AT&T Disability Income Program ("Program") is an employee welfare benefit plan and a Program under the defendant plan. (R. at 298). Under the Program, Eligible Employees may be eligible for short term disability ("STD") benefits. (R. at 298). STD benefits "are designed to provide some income replacement if an eligible employee cannot work, with or without reasonable accommodations, because of an approved Total Disability and/or Partial Disability that result from either illness or injury." (R. at 298). Under the Program, STD benefits "include benefits for Total Disability and Partial Disability" and "begin on the eighth consecutive day of absence from work due to an approved Total Disability or Partial Disability." (R. at 298). An eligible employee "must meet the Eligibility Requirements for the Program before the eighth consecutive calendar day of absence from work due to an approved Total Disability or Partial Disability." (R. at 300).

"Total Disability" or "Totally Disabled," for the purposes of STD benefits under the Program, means "because of illness or injury, you are unable to perform all of the essential functions of your job or another available job assigned by your Participating Company with the same full-time or part-time classification for which you are qualified." (R. at 300). "Partial Disability" or "Partially Disabled," means that "because of illness or injury, you are unable to

perform all of the essential functions of your job or another available job assigned by your Participating Company with the same full-time or part-time classification for which you are qualified, for the same number of hours that you were regularly scheduled to work before your disability." (R. at 300).

The Claims Administrator is the entity appointed by the Plan Administrator "to grant or deny or review claims under the Program." (R. at 326). The Plan Administrator in this case is AT&T Inc. (R. at 329). The Claims Administrator is AT&T Integrated Disability Service Center ("IDSC") which is administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"). (R. at 333). The Claims Administrator "determines all claims for benefits under the Program" and has sole discretion to determine whether an Eligible Employee has a disability that qualifies him or her for STD benefits under the Program. (R. at 332, 301). Here, the IDSC "has been delegated authority by the Plan Administrator to determine whether a particular eligible employee who has filed a claim for benefits is entitled to benefits under the Program. This includes the authority to determine claims and appeals on these matters." (R. at 332). Any determination made by the Plan Administrator (or a delegated third party, such as the Claims Administrator) will only be overturned if it is "arbitrary and capricious." (R. at 332).

Program costs are paid either by the employer or through a trust that is established for the Program; no Program benefits are provided by insurance. (R. at 331).

**C. Claims and Appeals Processes**

Eligible employees may file claims for STD benefits under the Program in the manner set forth on pages 31-32 of the Summary Plan Description. (R. at 321-22). If a claim for STD benefits is denied, the eligible employee may appeal the denial by filing a written request for review in the manner set forth on pages 32-33 of the Summary Plan Description. (R. at 322-23).

As part of filing an appeal, the eligible employee is instructed "to include any new or additional evidence or materials in support of [his/her] appeal that [he/she] wish[es] the Claims Administrator to consider." (R. at 323, 366). The IDSC guide specifies that on appeal, an employee will need to submit medical information to support his/her disability benefits claim. (R. at 361).

The appeal is determined by "[a] qualified individual who was not involved in the decision to deny [the] initial claim." (R. at 323). The Claims Administrator "may consult with, or seek the participation of, medical experts as part of the appeal resolution process." (R. at 323). The Claims Administrator "has full and exclusive authority and discretion to grant and deny claims and appeals under the Program." (R. at 322). An appeal "may be decided entirely on the basis of evidence submitted in writing . . ." (R. at 323). A review and decision on the appeal must be made within 45 days of receipt unless the eligible employee is notified in writing that more time is needed. (R. at 323).

### D. Application for STD Benefits

Plaintiff initiated a claim for STD benefits under the Program on or about February 9, 2009. (R. at 38-46). In his claim for STD benefits, Plaintiff alleged he is disabled due to depression and anxiety and bipolar disorders. (Document 54 at P. 5). The Claims Administrator issued a letter to Plaintiff on February 9, 2009 acknowledging the Plaintiff's claim and providing all the necessary information needed for submitting a claim for STD benefits from the Defendant plan. (R. at 38-46). The letter included a form titled "Instructions to Physician" specifically outlining procedures to be taken if an employee is missing work due to a mental illness. (R. at 44). The letter also requested that the Plaintiff submit medical information by February 24, 2009 to support his STD benefits claim. (R. at 38-39). The letter further advised that if the

4

documentation furnished by the employee's treatment provider did not establish that the employee could not perform the duties of his/her job with or without reasonable accommodation, then his/her claim would not qualify for benefit payments under the Plan. (R. at 38-39).

On February 26, 2009, the Claims Administrator issued a letter denying Plaintiff's STD benefits claim. (R. at 50-56). The letter explained that Plaintiff's claim had been denied for lack of medical documentation showing that he was unable to perform his job as Store Manager I, with or without reasonable accommodations. (R. at 51). The February 26, 2009 letter listed the type of information that would be needed to support a claim for STD benefits and provided instructions on how to appeal the decision denying his claim. (R. at 51-56). The letter specified that for Plaintiff's claim to qualify for disability benefits, the Claims Administrator would need clear documentation from Plaintiff's provider(s) explaining why Plaintiff is not able to perform the essential duties of his occupation. (R. at 51). The letter further stated that documentation was needed to show functional impairments related to Plaintiff's diagnosis and a treatment plan for returning to work. (R. at 51). The Claims Administrator contacted Plaintiff's immediate supervisor on February 10, 2009 and February 20, 2009 for information regarding Plaintiff's employment. (R. at 25, 29-30).

On March 11, 2009, Dr. Jeffrey Pike of HealthFirst Rapid Care, where Plaintiff was treated between September 2006 and February 2009, sent a fax to the Claims Administrator forwarding Plaintiff's general medical records. (R. 64-72). The documents submitted by Dr. Pike consisted of an ongoing treatment plan. (R. at 71-72). The Claims Administrator sent a letter to Plaintiff on March 12, 2009 notifying him that the initial decision to deny his claim had been upheld despite the additional submitted medical records from HealthFirst Rapid Care and again outlining the appeals process. (R. 73-77). The Claims Administrator explained in its letter that

the clinical evidence provided by Dr. Pike did not support a finding of a disability from February 16, 2009 to Plaintiff's return to work date. (R. at 73).

### E. Appeal and Denial of STD Benefits

Plaintiff, with counsel, appealed the denial of his STD benefits claim on June 15, 2009. (R. 96-102). Two forms provided by the Pennsylvania Department of Public Welfare ("DPW") and completed by Dr. Fozia Chatta were included in the appeal. (R. at 101-02). The two forms were a portion of the Employability Assessment Form and a portion of the Health-Sustaining Medication Assessment Form. (R. at 101-02). On the Employability Assessment Form, Dr. Chatta noted Plaintiff's diagnosis as "major depression, generalized anxiety/panic disorder, and hypertension" and checked the box titled "TEMPORARILY DISABLED—12 MONTHS OR MORE—is currently disabled to [sic] a temporary condition as a result of an injury or an acute condition and the disability temporarily precludes any gainful employment." (R. at 101). Dr. Chatta describes the disability as being in effect from April 15, 2009[1] to December 15, 2010. (R. at 101). The Health-Sustaining Medication Assessment Form, filled out by Dr. Chatta, noted that Plaintiff needed Prozac[2], Xanax[3], and blood pressure medication in order to sustain his employment. (R. at 102). In further explanation, Dr. Chatta noted on the form that Plaintiff "has severe depression. . . is unable to function without medication. . . [and] needs medication for high B.P." (R. at 102).

---

[1] Plaintiff maintains that this is the date when Dr. Chatta first saw Plaintiff concerning his current condition (see Chatta Dep. P. 19 in Appendix to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Exhibit 1)) (Document 58-1 at P. 6).

[2] Prozac is a brand name for Fluoxetine. Fluoxetine is a medication used to treat depression, obsessive-compulsive disorder (bothersome thoughts that won't go away and the need to perform certain actions over and over), some eating disorders, and panic attacks (sudden, unexpected attacks of extreme fear and worry about these attacks). Fluoxetine is in a class of medications called selective serotonin reuptake inhibitors (SSRIs). It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance. NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. NATIONAL LIBRARY OF MEDICINE

[3] Xanax is a brand name for Alprazolam. Alprazolam is a medication in the class of benzodiazepines and is used to treat anxiety disorders and panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks). Alprazolam works by decreasing abnormal excitement in the brain. NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, U.S. NATIONAL LIBRARY OF MEDICINE

The Claims Administrator notified Plaintiff by letter on June 19, 2009 that he/she had received his appeal. (R. at 126). The Claims Administrator also informed Plaintiff that the IDSC Quality Review Unit would review his appeal and would issue him a written response by July 30, 2009. (R. at 126). Plaintiff's counsel requested, and the Claims Administrator agreed by letter on July 1, 2009, to delay review of Plaintiff's appeal for twenty-one days pending the submission of additional medical records. (R. at 130). Plaintiff's counsel requested another twenty-one day enlargement and on July 22, 2009, the Claims Administrator again agreed to delay review of Plaintiff's appeal for an additional twenty-one days. (R. at 166). Plaintiff, with assistance of counsel, submitted additional medical records to the Claims Administrator on August 3, 2009. (R. at 167-211). The additional medical records included:

- A July 31, 2009 prescription slip for Lithium[4] noting a diagnosis of bipolar disorder[5] from Dr. Sireesha Johnson, MD of Family Services of Butler Memorial Hospital;
- Three appointment cards (two for Dr. Johnson and one for a therapist) for July 31, 2009, August 4, 2009, and August 14, 2009;
- An Individualized Treatment Plan from Family Services of Butler Memorial Hospital noting a diagnosis of anxiety disorder and depressive disorder;
- A general information form about Lithium;
- A clinical chart, patient admission documents, and discharge instructions from Butler Memorial Hospital's Emergency Services;
- Lab summaries from blood work;
- An application for Social Security Disability Benefits. (R. at 169-74. 176-210); and

---

[4] Lithium is an element of the alkali metal group, atomic no. 3, atomic wt. 6.941. Many of its salts have clinical applications. Lithium Carbonate is an agent used in the treatment and prophylaxis of depressive, hypomanic, and manic phases of bipolar affective disorders. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).
[5] Bipolar disorder is an affective disorder characterized by the occurrence of alternating manic, hypomanic, or mixed episodes and with major depressive episodes. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

- Records stemming from an emergency room visit on June 19, 2009 at Butler Memorial Hospital that indicate a mental health evaluation performed by Dr. Benado on the Plaintiff leading to a diagnosis of acute depression and bipolar disorder and an acknowledgement of suicidal ideation. (R. at 177-78, 186, 224-26, 232, 234).

On or about August 17, 2009, the Claims Administrator submitted an External Physician Advisor Referral Form in regard to Plaintiff's appeal. (R. at 261.1-63). The Referral Form requested that the Physician Advisor, Dr. Kenneth J. Marks, D.O., a Board Certified Psychiatrist, answer four questions based on the medical records and job description of the Plaintiff's store manager position that were attached to the Referral Form. (R. at 262.2; 263). The four questions asked and subsequently answered by Dr. Marks were:

(1) Is the employee disabled from his regular job from February 16, 2009 to present? (R. at 262.2).

*Dr. Marks' Answer:* Michael Marshall is not disabled from his job from February 16, 2009 forward. (R. at 270).

(2) If disabled, what is the rationale or basis for the disability? (R. at 262.2).

*Dr. Marks' Answer:* Michael Marshall is not psychiatrically disabled and there is no rationale or basis for it. (R. at 270).

(3) What are the clinical findings contained in the medical record and how would it impact the employee's ability to function? (R. at 262.2)

Dr. *Marks' Answer:* There are no objectively noted signs of any type of psychiatric disability or objective clinical findings contained in the medical record that would impact Michael Marshall's ability to function. (R. at 270).

(4) If there are findings that are not clinically significant, why are these findings not clinically significant? (R. at 262.2)

*Dr. Marks' Answer:* N/A. All findings are significant. (R. at 270).

On or about August 21, 2009, Dr. Marks submitted an Independent Medical Review to the Claims Administrator. (R. at 268-71). The medical records reviewed in Dr. Marks' report are the documents that Plaintiff submitted to the Claims Administrator. (R. at 269). Dr. Marks states in his report that he called both Dr. Johnson's and Dr. Chatta's offices on August 18, 2009 and spoke with a staff member at each office. (R. at 269). Dr. Marks states that he requested a call back within twenty-four hours at which time his report would be rendered complete. (R. at 269). Neither office called back within twenty-four hours. (R. at 269). Dr. Johnson's office called back on August 28, 2009 and spoke with Dr. Marks, but Dr. Marks did not change his report after such discussion. (R. at 269). Dr. Chatta maintains that her office received no call from an adjustor or a doctor in connection with Plaintiff's claim. (*see* Chatta Dep. P. 19) (Document 58-1 at P. 6).

Dr. Marks' report contained a Psychiatric Synopsis based on the information provided to him regarding the Plaintiff. Dr. Marks noted that the provided records did not show any objective signs of psychiatric decomposition that would warrant the Plaintiff psychiatrically disabled. (R. at 269). Dr. Marks stated that in all the material he reviewed, using standard techniques of measurement, there were no objectively noted signs of cognitive impairment demonstrating that the Plaintiff is psychiatrically disabled. (R. at 269). Dr. Marks also concluded in his report that the Plaintiff had exceeded the expected amount of work loss for this diagnosis.[6] (R. at 270).

---

[6] Plaintiff disputes the findings of Dr. Marks' report citing records submitted by Dr. Pike regarding the dates of Plaintiff's treatment and diagnoses made during that treatment. (*see* R. at 68-72) (Document 56 at ¶ 57).

In light of Dr. Marks' report, the Claims Administrator sent a letter dated September 10, 2009 to Plaintiff's counsel notifying him of its decision to uphold the previous denial of Plaintiff's STD benefits. (R. at 277-78). The Claims Administrator cites both the definition of "Total Disability"[7] under the Program and the report submitted by Dr. Marks in its September 10, 2009 letter. (R. at 277, 300). The Claims Administrator reported there were no findings "so severe as to prevent [Plaintiff] from performing the duties of his job as Store Manager I, with or without reasonable accommodation from February 16, 2009 through the present." (R. at 278). Its letter also includes information regarding the Plaintiff's rights to bring a lawsuit under ERISA. (R. at 278).

### III. PROCEDURAL HISTORY

Plaintiff filed his complaint against AT&T Mobility, LLC on December 29, 2009 alleging disability discrimination in violation of the ADA, 42 U.S.C. § 12112, and the wrongful denial of short-term disability benefits under ERISA, 29 U.S.C. § 1132. (Docket No. 1). On February 8, 2010, Plaintiff filed an Amended Complaint segregating his claims; i.e., asserting the ADA violation against AT&T Mobility, LLC and the ERISA violation against AT&T Umbrella Benefit Plan No. 1. (Docket No. 11). On March 8, 2010, Defendant Plan filed its Answer to Plaintiff's Amended Complaint. (Docket No. 12). On March 8, 2010 Defendant AT&T Mobility, LLC filed a Motion to Dismiss for improper venue. (Docket No. 13).

On March 16, 2010, the Court granted Defendant AT&T Mobility, LLC's Motion to Dismiss for Improper Venue in the form of a transfer of Plaintiff's ADA claim against Defendant AT&T Mobility, LLC to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1406(a). (Docket No. 22). The United States District Court for the Western District of Pennsylvania retained jurisdiction and venue over Plaintiff's ERISA claim

---

[7] *supra*, at 1-2.

against Defendant AT&T Umbrella Benefit Plan No. 1. (Docket No. 22). Defendant AT&T Mobility, LLC was then terminated from the portion of the case that remained in the United States District Court for the Western District of Pennsylvania as no further claims remained against it. (Docket No. 22).

Defendant plan filed a Motion for Summary Judgment on October 13, 2010. (Docket No. 50). On December 1, 2010, Plaintiff filed his response to Defendant plan's Motion for Summary Judgment. (Docket No. 53). As the briefing has concluded, Defendant plan's motion is ripe for disposition.

### IV. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) (2010)[8]. Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over

---

[8] Rule 56 was amended effective December 1, 2010. The explanatory notes to the 2010 amendments explain that while the language in Rule 56 was changed from "issue" to "dispute", the "standard for granting summary judgment has not changed." Thus, the Court considers binding prior jurisprudence of the United States Supreme Court and the United States Court of Appeals for the Third Circuit in arriving at the standard to be employed in addressing the instant motions. FED.R.CIV.P. 56

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

## V. ANALYSIS

The first step in the Court's analysis is to determine whether the decisions of the Plan Administrator and Claims Administrator are entitled to deference under the terms of the Program. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). The AT&T Disability Income Program ("Program") is an employee welfare benefit plan and a Program under the AT&T Umbrella Benefit Plan No. 1 ("Plan"). (R. at 298). The Claims Administrator is the entity appointed by the Plan Administrator "to grant or deny or review claims under the Program." (R. at 326). The Plan Administrator in this case is AT&T Inc. (R. at 329). The Claims Administrator is AT&T Integrated Disability Service Center ("IDSC") which is administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"). (R. at 333). The Claims Administrator "determines all claims for benefits under the Program" and has sole discretion to determine whether an Eligible Employee has a disability that qualifies him or her for STD benefits under the Program. (R. at 332, 301). Here, the IDSC "has been delegated authority by

the Plan Administrator to determine whether a particular eligible employee who has filed a claim for benefits is entitled to benefits under the Program. This includes the authority to determine claims and appeals on these matters." (R. at 332). Any determination made by the Program Administrator (or a delegated third party, such as the Claims Administrator) will only be overturned if it is "arbitrary and capricious." (R. at 332). Given the clear and unambiguous language of the Plan, the Court cannot review the challenged determination de novo. *Firestone Tire,* 489 U.S. at 115. Instead, the dispositive inquiry is whether the decision denying Plaintiff's application for STD benefits was "arbitrary and capricious." *Id.*

In applying the arbitrary and capricious standard of review, the Court "is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.,* 222 F.3d 123, 129 (3d Cir. 2000). Under the arbitrary and capricious standard, the Court must accord extreme deference to the Defendant plan's determination, allowing the Court to overturn a claim denial "only if it is clearly not supported by the evidence of record," or if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pinto v. Reliance Standard Life Insurance Co.,* 214 F.3d 377, 393 (3d Cir. 2000); *Orvosh,* 222 F.3d at 129. Plaintiff bears the burden of proof to demonstrate that the Claims Administrator's decision to deny benefits was arbitrary and capricious. *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 439-40 (3d Cir.1997).

In order to qualify for STD benefits under the Program, Plaintiff must establish that "because of illness or injury, [he] [is] unable to perform all of the essential functions of [his] job or another available job assigned by [his] Participating Company with the same full-time or part-time classification for which [he] [is] qualified." (R. at 300). Plaintiff claims that he has been

13

diagnosed with major depression, generalized anxiety, bi-polar disorder and hypertension. In support of these diagnoses, Plaintiff offers records and documents from four treating physicians.

The medical records included:

- A July 31, 2009 prescription slip for Lithium[9] noting a diagnosis of bipolar disorder from Dr. Sireesha Johnson, MD of Family Services of Butler Memorial Hospital;

- Three appointment cards (two for Dr. Johnson and one for a therapist) for July 31, 2009, August 4, 2009, and August 14, 2009;

- An Individualized Treatment Plan from Family Services of Butler Memorial Hospital noting a diagnosis of anxiety disorder and depressive disorder;

- A general information form about Lithium[10];

- A clinical chart, patient admission documents, and discharge instructions from Butler Memorial Hospital's Emergency Services;

- Lab summaries from blood work;

- An application for Social Security Disability Benefits. (R. at 169-74. 176-210); and

- Records stemming from an emergency room visit on June 19, 2009 at Butler Memorial Hospital that indicate a mental health evaluation performed by Dr. Benado on the Plaintiff leading to a diagnosis of acute depression and bipolar disorder and an acknowledgement of suicidal ideation. (R. at 177-78, 186, 224-26, 232, 234).

Also provided were two DPW forms completed by Dr. Fozia Chatta. The two forms were a portion of the Employability Assessment Form and a portion of the Health-Sustaining Medication Assessment Form. (R. at 101-02). On the Employability Assessment Form, Dr. Chatta noted Plaintiff's diagnosis as "major depression, generalized anxiety/panic disorder, and

---

[9] See note 4.
[10] See note 4.

hypertension" and checked the box titled "TEMPORARILY DISABLED—12 MONTHS OR MORE—is currently disabled to [sic] a temporary condition as a result of an injury or an acute condition and the disability temporarily precludes any gainful employment." (R. at 101). Dr. Chatta describes the disability as being in effect from April 15, 2009 to December 15, 2010. (R. at 101). The Health-Sustaining Medication Assessment Form, filled out by Dr. Chatta, noted that Plaintiff needed Prozac[11], Xanax[12], and blood pressure medication *in order to sustain his employment*. (emphasis added) (R. at 102). In further explanation, Dr. Chatta noted on the form that Plaintiff "has severe depression. . . is unable to function *without medication*. . . [and] needs medication for high B.P." (emphasis added) (R. at 102). Dr. Jeffrey Pike of HealthFirst Rapid Care, where Plaintiff was treated between September 2006 and February 2009, sent a fax to the Claims Administrator forwarding Plaintiff's general medical records which included a finding of *partial* disability (emphasis added). (R. 64-72).

On or about August 17, 2009, the Claims Administrator submitted to Dr. Kenneth J. Marks, DO, a Board Certified Psychiatrist, an External Physician Advisor Referral Form in regard to Plaintiff's appeal. (R. at 261.1-63). The Referral Form requested that the Physician Advisor determine if Plaintiff was disabled based on the medical records and job description of the Plaintiff's store manager position that were attached to the Referral Form. (R. at 262.2; 263). Dr. Marks determined as follows: Michael Marshall was not disabled from his job from February 16, 2009 forward; Michael Marshall was not psychiatrically disabled; there was no rationale or basis for the finding that he was disabled; there were no objectively noted signs of any type of psychiatric disability or objective clinical findings contained in the medical record that would impact Michael Marshall's ability to function. (R. at 270).

---

[11] See note 2.
[12] See note 3.

Dr. Marks also submitted an Independent Medical Review to the Claims Administrator. (R. at 268-71). The medical records reviewed in Dr. Marks' report are the documents that Plaintiff submitted to the Claims Administrator. (R. at 269). In that review, Dr. Marks makes the following statement:

> Michael Marshall is a store manager for ATT. His last date worked was 02/08/09 and his disability began on 2/16/09. There is no [return to work] date. Michael Marshall is claiming disability secondary to bipolar disorder and depression. This chart is fully reviewed and all of the notes from all of Michael Marshall's providers are read and appreciated. The following is noted: There are no records provided from any of Michael Marshall's providers for dates just before, on, or just after the time of Michael Marshall's last date worked or the date his disability started. The records provided for the months following the above dates, from all of Michael Marshall's providers, do not note any objective signs of psychiatric decomposition that would warrant Michael Marshall as psychiatrically disabled. In all the notes reviewed, there are no objectively noted signs of any type of psychiatric decomposition, using standard techniques of measurement, that show cognitive impairment, that demonstrate that Michael Marshall is psychologically disabled.

(R. at 268-71). Based on the submissions made by Plaintiff and the report of Dr. Marks, the Defendant plan determined that Plaintiff was not disabled as defined by the Program and denied Plaintiff STD benefits. Plaintiff argues that in making this determination, Defendant plan gave inappropriate deference to the report of Dr. Marks over the records and reports of Plaintiff's treating physicians. Such deference to a physician who only reviews records over treating physicians is arbitrary and capricious according to Plaintiff's argument.

While administrators of ERISA plans need not afford special deference to the claimant's treating physician, and are under no "discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation", *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), they may *not* "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Id.*; *Michaels v. Equitable Life Assur. Soc.,* 305 Fed.Appx. 896, 906-907 (3d Cir.2009). In *Michaels*,

the court disapproved of the administrator's decision to give determining weight to conclusions of non-examining experts over those of claimant's treating physicians and thus "discredit [ing] of substantial evidence" in denying plan benefits. In this case, however, there is no conflict between the treating physicians and Dr. Marks. Dr. Marks finds no psychiatric disability. The treating physicians, to the extent they comment at all on Plaintiff's ability to work, state unequivocally that he can work when appropriately medicated. In other words, when Plaintiff is taking his medication, he is not disabled.

Plaintiff asserts that two of his treating physicians, Dr. Pike and Dr. Chatta, offer opinions that Plaintiff is disabled. However, when the records and reports of these two physicians are examined, they do not support Plaintiff's argument. Specifically, Dr. Pike, while diagnosing Plaintiff with depression, reports in his records that Plaintiff has had depressive symptoms previously and did well on anti-depression medication. Significantly, Dr. Pike also reports that Plaintiff does not always take this medication as prescribed. (Docket No. 52, Ex. C, p. D00071). Dr. Chatta, while offering an opinion that Plaintiff was temporarily disabled, points out that Plaintiff is capable of functioning while medicated. What is most important is that neither Dr. Pike, nor Dr. Chatta offer opinions that include factual support for the assertion that Plaintiff cannot perform the essential functions of the job he held at AT&T Mobility, LLC despite the fact Plaintiff and both doctors were informed by the Claims Administrator that such information was required for a determination of disability. (R. at 38-46). Thus, the only evidence provided to the Claims Administrator regarding the ability of Plaintiff to perform the essential functions of his job is the report of Dr. Marks. Under these circumstances, the denial of benefits by the Defendant plan can hardly be considered arbitrary and capricious.

Plaintiff next argues that when making the determination that Plaintiff was not disabled, the Defendant plan was operating under a conflict of interest citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The *Glenn* court stated that conflict of interest is one factor to be considered in the determination of whether the decision of the administrator is arbitrary and capricious. *Id.* As to the meaning of the word "factor" the court stated as follows:

> We believe that … the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. …
>
> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

*Id.*, at 117. Assuming there is a conflict of interest as described in *Glenn* in this case, something the Court need not decide, the conflict would only require the Court to overturn the Defendant plan's determination if all other evidence for and against the Plaintiff was equally balanced. Such is not the case. As previously stated, Plaintiff has produced no evidence that he is or was disabled because his own treating physicians reported that he was able to work if he took his prescribed medications.

Finally, Plaintiff, citing *Glenn*, argues that the Defendant plan's procedures were unreasonable and so its determination denying benefits must be overturned. However, *Glenn* does not stand for that proposition. *Glenn* merely describes the appropriateness of the factual analysis of the lower courts when deciding whether the plan administrator's determination denying benefits was arbitrary and capricious. No particular "procedural reasonableness" is prescribed. *Id.*, at 118. Having said that, the Court in this case finds that the Defendant plan's procedures were reasonable. This is particularly so when the procedures to support a claim for

STD benefits were provided to Plaintiff by the Defendant plan. Moreover, Plaintiff attempts to place some responsibility on the Defendant plan to investigate his claim when he, himself, fails to provide requested and required information. No such responsibility exists under the Program, not does Plaintiff cite any legal authority to support this position.

In sum, Plaintiff has failed to make a showing sufficient to establish the existence of a genuine issue of material fact as to the existence of a disability under the terms of the ERISA plan in question. The Court therefore finds that even when taking the facts in a light most favorable to the Plaintiff, Defendant is entitled to judgment as a matter of law. Defendant's motion is thus GRANTED and Plaintiff's complaint is dismissed, with prejudice.

## VI. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment (Docket No. 50) is GRANTED. Judgment is entered in favor of Defendant and Plaintiff's claims are dismissed, with prejudice. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: April 8, 2011

cc/ecf: All counsel of record.